IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CERTAIN UNDERWRITERS AT LLOYD'S, ; *et al.*,

    Plaintiff,

vs.                      Case No. 16-2760-JTM

FLIGHTSAFETY INTERNATIONAL, *et al.*,

    Defendants.

MEMORANDUM AND ORDER

Cecil Foster started a fire in his room at the Residence Inn Wichita East when he fell asleep while frying eggrolls on the stovetop, according to the Amended Complaint filed by the plaintiffs. The fire resulted in $147,006.95 in damages to the hotel, and the insurers of the hotel have sued both Foster and his employer, FlightSafety International. After FlightSafety moved to dismiss the first Complaint (Dkt. 10) on the grounds that it had no liability for Foster's negligence, the plaintiffs filed an Amended Complaint (Dkt. 14). FlightSafety then renewed its motion to dismiss. (Dkt. 18).

The plaintiffs' Amended Complaint stresses that Foster was on a business trip and that FlightSafety paid for the room. In addition, they allege that FlightSafety had an agreement with the hotel for discounted room rates. According to the Amended

Complaint, "the entire purpose of Defendant Foster's trip was business on behalf of Defendant FlightSafety." (¶ 35).

In their response to the renewed motion to dismiss, plaintiffs argue that dismissal is inappropriate in the absence of "evidence ... regarding the time, place, or circumstances" of the accident, or of "Foster's position within FlightSafety, the specific requirements and/or nature of his employment, or even whether he was still on-call or working when the fire took place." (Dkt. 20, at 5). While FlightSafety "scoffs at the notion that cooking eggrolls while on a work trip could be within the course and scope of employment," the plaintiff suggests that "[t]here are a number of plausible scenarios wherein Defendant Foster could have been in the course and scope of his employment while cooking." (*Id.*) FlightSafety argues in its reply that the plaintiffs have failed to detail what those scenarios are, and that "Foster's conduct in cooking, sleeping, and doing both simultaneously" should not be imputed to FlightSafety. (Dkt. 21, at 6).

Under Kansas law, an employee acts within the scope of employment if he performs services for which he has been employed or does anything reasonably incidental to the employment. "The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the employer, but whether such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it." *Commerce Bank of St. Joseph v. State*, 251 Kan. 207, 210, 833 P.2d 996 (1992). *See also O'Shea v. Welch*, 350 F.3d 1101, 1103 (10th Cir. 2003) (citing Pattern Instructions Kansas 3d 107.06; *Williams v. Cmty. Drive-In Theater, Inc.*, 520 P.2d 1296, 1301–02 (Kan. 1974)). Under this flexible

2

approach, Kansas law permits recovery for injuries caused by a servant who has deviated but slightly from his ordinary duties, recognizing that the servant "does not cease to be acting within the course of his employment because of an incidental personal act, or by slight deflections for a personal or private purpose, if his main purpose is still to carry on the business of his employer." *O'Shea*, 350 F.3d at 1107. Whether an employee's deviation is slight or substantial is determined by reference to: (1) the employee's intent; (2) the nature, time, and place of the deviation; (3) the time consumed in the deviation; (4) the work for which the employee was hired; (5) the incidental acts reasonably expected by the employer; and (6) the freedom allowed the employee in performing his job responsibilities. *Id.* at 1108 (citing *Felix v. Asai*, 192 Cal. App. 3d 926, 237 Cal. Rptr. 718, 722 (1987)).

Whether an injury arose within the scope of employment is a generally a factual determination; the court may resolve "this question as a matter of law when only one reasonable conclusion can be drawn from the evidence." *Lamberth v. United States*, No. 16-2709, 2017 WL 747871, at *2 (D. Kan. Feb. 27, 2017) (*citing Wayman v. Accor N. Am., Inc.*, 251 P.3d 640, 646 (Kan. Ct. App. 2011)). The determination "involves a consideration of the individual factual setting of each case, including objective as well as subjective considerations." *Foster v. Bd. of Trustees of Butler County Cmty. Col.*, 771 F. Supp. 1122, 1130 (D. Kan. 1991) (citing *Focke v. United States*, 597 F. Supp. 1325, 1339 (D. Kan. 1982)).

FlightSafety argues that Foster simply could not have been acting in the scope of his employment, and supports its motion to dismiss by reliance on five cases from outside Kansas, and one early decision by the Kansas Supreme Court.

3

In *Minamayor Corp. v. Paper Mill Suppliers, Inc.*, 297 F. Supp. 524, 525 (E.D. Pa. 1969), the court determined that an employer was not responsible for a motel fire caused by one of its salesmen, even though the employer paid for the trip's expenses and the salesman was "subject to call at any time." The court observed:

> It is obvious that [the salesman's] conduct in rising, shaving and apparently lighting a cigarette were neither acts within the scope of his employment or negligent conduct during the course thereof. That employers are responsible for all acts of their salesmen while on the road without regard to whether such acts are related in any way to the employer's business is, if the folklore surrounding the conduct of travelling salesmen has any basis in fact, a frightening contemplation.

*See also Acadia Ins. Co. v. United States*, No. 13-S-895-NE, 2016 WL 304568 (N. D. Ala. Jan. 25, 2016) (employer not responsible for fire caused by an employee smoking from a hotel balcony).

But cases such as *Minamayor* have been rejected as a general model for determiniing the scope of duty of a traveling employee. In *Lexington Ins. Co. v. Henkels & McCoy, Inc.*, No. 02-0764, 2002 WL 32130104, at *2 (E.D. Pa. May 20, 2003), the court denied summary judgment as to whether the defendant's employee, who started a hotel fire by leaving an oil-filled pan unattended on the stove, was acting in the scope of his employment. The court noted the extended nature of the employee's assignment, and the fact that the company's workers frequently "chose an efficiency hotel with cooking facilities … because it was less expensive than going out to eat every night." *Id.* At the time of the fire, the employee had been staying at the hotel for two and a half months. The court noted that it was the employer's practice to send

4

employees ... to remote locations for extended business trips. Moreover, lodging and eating will necessarily be elements of such extended business trips, whether they are directly provided by the employer or not, and Defendant's understanding of this fact is evident in its provision of $40 per day to its employees for living expenses. Thus, a reasonable juror might conclude that in preparing his meal at the efficiency hotel on a Sunday during a business visit lasting over two and a half months, Underwood's actions were incidental to and in furtherance of Defendant's business interests.... [A] reasonable juror might find that Defendant had knowledge of the propensity of its employees to stay at "extended stay" hotels (or efficiency hotels) and to prepare their own meals on extended business trips (in order to be able to afford to sleep and eat on the $40 per diem allowance provided by Defendant), and that Defendant could therefore have reasonably expected such conduct under the circumstances.

*Id.* at 4.

The court explicitly distinguished *Minamayor* on the grounds that the specific cause of the fire in that case — smoking — has been generally recognized as "an act being purely for the servant's own enjoyment and in no way in furtherance of the master's business." *Id.* at n. 4 (quoting *Herr v. Simplex Paper Box Corp.*, 330 Pa. 129, 198 A. 309, 311 (Pa.1938)).

The contrast between smoking and eating also played a role in *Acadia Insurance*, another of the cases cited by FlightSafety. In that case, the court distinguished cases such as *Singleton v. Burchfield*, 362 F. Supp. 2d 1291 (M.D. Ala. 2005) and *Flohr v. Mackovjak*, 84 F.3d 386 (11th Cir. 1996). In *Flohr*, for example, the court held that the Army could be held liable for the negligent driving of a civilian employee, on an extended assignment out of state, who was returning to his hotel from a restaurant. *See* 84 F.3d at 391-92 ("[i]t is reasonable to assume that the Army expected the men to use the automobile it provided to drive not only to and from the conference but also to a place where they could purchase

5

meals, which were also paid for by the Army").

Indeed, the *Acadia* court itself stressed the difference between smoking and eating meals:

> Driving a government-provided car to purchase dinner while on work-related travel does not carry the same significance as smoking or discarding cigarettes during a time of day that has absolutely no connection with the employee's duties. [I]t is much more reasonable for an employer to expect its employee who is on work-related travel to drive to a restaurant to purchase a meal than it is to expect the same employee to smoke cigarettes. ***Meals are a necessity; cigarettes are not***. Finally, and importantly, the United States did not pay for Agent Siegling's cigarettes. In contrast, the government employers paid for the cars and meals in the *Singleton* and *Flohr* cases. Agent Siegling was in fact prohibited from using his government-issued credit card to purchase items like cigarettes.

2016 WL 304568, at *7 (emphasis added).

*Mosby v. McGee*, No. 07-3905, 2009 WL 2171104 (D. Minn. July 20, 2009), another smoking case cited by FlightSafety, again provides little support for its motion. In that case the court held that St. James Lutheran Church was not responsible for a fire caused when McGee, its pipe-smoking employee, discarded his ashes into a planter on the deck of the house where he was staying. But the court in reaching this conclusion distinguished *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 15 (Minn.1979), which held that an employer might be liable for employee who started a fire as he smoked while filling out expense reports in his hotel room. *Mosby* distinguished *Gatzke* both because of what the employee was doing at the time — McGhee at the time "was merely standing on the Mosbys' deck in the dark, hours after the events at the conference had finished for the day" — and because the employee in *Gatzke* was on an extended, employer-paid trip: "[i]n sum,

6

McGee was smoking after the conference events were over for the day, at a time when he was not doing anything traceable to his work responsibilities, in a place that had no formal connection to his employment for St. James." *Id.* at *4.

The other two non-Kansas cases cited by FlightSafety do touch on employees cooking meals, but provide little support for dismissal of the present action. *In Security Ins. Co. of Hartford v. St. Paul Fire and Marine Ins. Co.*, 375 So. 2d 687 (La. Ct. App. 1979), the court held that a shipping company would not be liable for an apartment fire which began when Ransom, its employee, left the stove on while he drove a friend to the airport. Although the insurer stressed that the shipping company paid for the apartment, the court concluded that "*this fact alone* cannot lead to the conclusion that anything done by Ransom while in the apartment is within the course and scope of his employment." 375 So.2d at 689 (emphasis added). The court pointed to evidence that at the time of the fire Ransom had ceased doing its employer's business and had undertaken the "personal task of driving a friend to the airport." *Id.*

Finally, *Brown v. Mid-Central Fish Co.*, 641 S.W.2d 785, 786 (Mo. Ct. App. 1982), which FlightSaftey describes as holding that "cooking dinner constituted a 'temporary deviation' from the scope of employment," (Dkt. 19, at 10), in fact does not involve any fire or cooking incident, but a salesman killed in a late night automobile accident. The court found that at the time of the accident, the salesman was acting within his employment by returning to his small town home after his work in Kansas City, Missouri. The court agreed with the earlier finding of the workers compensation commission that the salesman had

7

returned to the scope of his employment after having "temporarily deviated" in his actions earlier in the night — but it is inaccurate to characterize that action as simply "cooking dinner." As both the court and the commission noted, the salesman had stopped and had dinner with three friends at a co-worker's home and then watched Monday Night Football for nearly three and a half hours. 641 S.W. at 786.

The one Kansas case cited by FlightSafety also provides little basis for dismissal prior to discovery. In *Schooley v. Swanson*, 147 Kan. 758, 78 P.2d 858 (1938), the court held that an employee was not acting in the scope of his employment when he was injured while chopping wood to cook an evening meal. The employee had agreed to care for the cattle on a tract of land in exchange for "the use of a seven-room house on the land, a plot for garden purposes, the use of a cow, and was to receive $45 per month." *Id.* at 859. The court stressed that the contract was only for "feeding cattle," and that the employer "had not agreed and *was under no obligation to furnish fuel* to the claimant. Fuel had been purchased by claimant at his own expense. It consisted of wood and coal." 147 Kan. at 859, 860 (emphasis added).

The *Schooley* court distinguished cases cited by the plaintiff in that action — *Thomas v. Proctor & Gamble Manufacturing Co.*, 104 Kan. 432, 179 P. 372 (1919), abrogated by *Coleman v. Armour Swift-Eckrich*, 281 Kan. 318, 130 P.3d 111 (2006), and *Chance v. Reliance Coal & Mining Co.*, 108 Kan. 121, 193 P. 889 (1920) — on factual grounds:

> The accident in the[se] cases cited resulted from conditions which had become established customs in the business of the employer. In the *Thomas* Case, claimant, a girl, was injured on a truck which was used for amusement

8

> of the employees during a short thirty-minute noon intermission. There was evidence such use of the truck was an established custom and was conducted with the foreman's knowledge and consent. The shortness of the intermission made it difficult for employees to go elsewhere for their lunch. It was to the employer's interest they should be back for duty on time. The practice of taking their lunch with them and using the trucks for amusement during the short intermission had become a condition under which the business was carried on.

*Id*. at 860.

Custom and employer knowledge also played a role in the same court's decision in *Benson v. Bush*, 104 Kan. 198, 178 P. 747 (1919), upholding a jury's determination that a railroad station agent was acting in the scope of his employment when he injured himself by inadvertently using kerosene while building a fire. The railroad argued that, having provided kerosene solely for lighting and expressly prohibiting its use for building fires, the agent's actions were not within the scope of his employment. The court observed:

> The most natural thing for a station agent to do is to make a fire in the stove when the weather is cold, and, notwithstanding the dangers and prohibitions, everybody knows that folks will start fires with coal oil. It appeared in this case that the agents generally used signal oil or kerosene in starting fires in that locality. The plaintiff testified: "It was the custom of the agents to do that. All that I have ever known. I have known a majority of them along that special division." The very fact that the defendant had a rule against using kerosene to start fires indicates a knowledge that such warning was needed, which is another way of saying that it indicated consciousness of the agents' custom to use coal oil for kindling.

178 P. at 749.

In *Schooley*, the facts established that the employee hired to tend cattle alone bore the expense of finding fuel, and no evidence (as with the "established custom" in *Thomas* or what "everybody knows" in *Benson*) suggesting that the employer had any reason to

9

foresee the employee's actions which led to his injuries. As with the cases from outside Kansas, *Schooley* was decided after a full exploration of the facts relevant to the case. Here, FlightSafety asks the court to rule that Foster could not have been acting in the scope of employment, in advance of any discovery as to the facts of established custom or the employer's knowledge.

The plaintiffs must state a claim to relief that is plausible on its face, and provide sufficient detail to raise the claim to more than speculation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Although [s]pecific facts are not necessary" to comply with Rule 8(a)(2), the complaint must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Burnett v. Mortgage Elec. Regis. Sys.*, 706 F.3d 1231, 1235 (10th Cir. 2103) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555)).

The court finds the Amended Complaint should not be dismissed prior to discovery. As suggested above, the cases cited by FlightSafety do not conclusively establish that an employee cooking a meal in a hotel is automatically outside the scope of his employment. All of the cases appear to have been decided after discovery. Half of the cases cited involve hotel fires caused by smoking, with one of the cases explicitly distinguishing between a voluntary activity like smoking and eating meals, describing the latter as a "necessity." All of the cases which do involve eating meals are factually distinguishable, and include extravagant additional employee deviations such as leaving a stove unattended while driving a friend to the airport. None of the meal cases cited by FlightSafety are recent (the

Kansas case is from 1938), and none touch on the sort of extended-stay business travel required by many modern employers.

In contrast, in addition to the *Lexington Insurance* case noted previously, other courts have long recognized that, for workers compensation purposes, an employee eating a meal on the road may be acting in the scope of employment. Writing of traveling salesmen, the Georgia Supreme Court has observed:

> While lodging in a hotel or preparing to eat, or while going to or returning from a meal, he is performing an act incident to his employment, unless he steps aside from his employment for personal reasons. Such an employee is in continuous employment, day and night. This does not mean that he can not step aside from his employment for personal reasons, or reasons in no way connected with his employment, just as might an ordinary employee working on a schedule of hours at a fixed location. He might rob a bank; he might attend a dance; or he might engage in other activities equally conceivable for his own pleasure and gratification, and ordinarily none of these acts would be beneficial or incidental to his employment and would constitute a stepping aside from the employment. *The eating of meals, while a pleasure indulged in by a traveling salesman and all mankind, is as necessary to the continuance of his duties as the breath of life; and where his duties take him away from his home, his acts of ministration to himself should not — and we believe to not — take him outside the scope of his employment, so long as he performs these acts in a normal and prudent manner.*

*Thornton v. Hartford Acc. & Indemn. Co.*, 198 Ga. 786, 789-90, 32 S.E.2d 816, 818 (1945). *See also Alexander Film Co. v. Indus. Comm'n*, 136 Colo. 486, 491-92, 319 P.2d 1074, 1077 (1957) (for an employee "[r]equired to be away from his home by the duties of his employment, his compensation covering the expenses necessary and incident to living away from home, any hazards present in staying at the motel, eating at a restaurant, and in going to and from these places come within the ambit of the compensation act"); *Walker v. Speeder*

*Machinery*, 213 Iowa 1134, 240 N.W. 725 (1935); *Stansberry v. Monitor Stove Co.*, 150 Minn. 1, 183 N.W. 977 (1921).

Nor is the doctrine limited to workers compensation cases. In *Fowler v. United States*, 647 F.3d 1232 (10th Cir. 2011), the Tenth Circuit followed Colorado's "traveling servant" doctrine as set forth in *Alexander Film*, and applied the doctrine to a Federal Tort Claims Act claim. The plaintiff was a motorcyclist who alleged injuries in a collision with an Air Force officer on an extended duty assignment. The district court granted the government's motion for summary judgment, holding that at the time of the accident the officer was not acting in the scope of his employment. The Tenth Circuit reversed, stressing not only the preference for discovery, as "[i]n general, the question of whether whether an employee is acting within the scope of the employment is a question of fact,'" *id.* at 1238 (quoting *Raleigh v. Performance Plumbing and Heating*, 130 P.3d 1011, 1019 (Colo. 2006), but also the state law recognized in *Alexander Film*:

> Significantly, Colorado courts have long recognized the so-called "traveling employee" rule. Under this rule, when an employee is required to be away from his home by the duties of his employment, his compensation covering the expenses necessary and incident to living away from home, any hazards present in staying at the motel, eating at a restaurant, and in going to and from these places are considered incident to the employee's employment. Thus, when a traveling employee must of necessity eat and sleep in various places in order to carry on the business of his master, the acts committed by an employee while lodging in a public accommodation, preparing to eat, or while going to or returning from a meal are necessarily incident to, and within the scope of, his employment.

*Id.* (internal quotations and citations omitted). The court concluded that there was an issue of fact whether the officer, who at the time of the accident was returning to his hotel in

12

order to take a nap, was acting in the scope of his employment.

Here, the complaint lacks detailed factual allegations, but nonetheless gives the defendant fair notice of the nature of the plaintiffs' claim that Foster was acting within scope of his employment. The Amended Complaint alleges that Foster was on a business trip for FlightSafety (¶ 13), and registered at the Residence Inn using his FlightSafety employee identification (¶ 12), and FlightSafety paid for the room. (¶ 14). Foster caused the fire by using a stove installed in the room (¶25(a)). The Residence Inn thus appears to be what *Lexington Insurance* describes as "an efficiency hotel with cooking facilities." 2002 WL 32130104, at *2. And the Amended Complaint alleges that FlightSafety had entered into an agreement with Residence Inn for discounted room rates (¶ 33), suggesting that FlightSafety might reasonably foresee extended stays by its employees. The complaint alleges that Foster is a resident of Oklahoma (¶ 7), but there is no evidence as to how long Foster stayed at the Residence Inn, whether he was required to stay at that location, the availability of other places to eat in the vicinity, his working hours, or his job duties.

It may be ultimately be the case that Foster was indeed acting outside the scope of his employment at the time of the fire. But this determination should be made after a full opportunity to discover the facts surrounding the accident.

IT IS ACCORDINGLY ORDERED this 11th day of April, 2017, that the defendant's Motions to Dismiss (Dkt. 10, 18) are hereby denied.

                                                 s/ J. Thomas Marten  
                                                 J. THOMAS MARTEN, JUDGE